# ,WHITNEY *v.* HOWARD.

PATENTS; INTERFERENCE; PRIORITY; ORIGINALITY; BURDEN OF PROOF.

1. Where the junior party to an interference employed the senior party to build a machine and each claimed to have invented the improvement embodied therein and to have disclosed the invention, which covered one of such improvements, to the other, and there were constant disputes between them in regard to whose invention it was, but it appeared that finally, under an agreement between them, the senior party's application covering the invention was filed by the attorneys for a company formed by the junior party and his financial backer, the company paying the expense of the same, and the junior party and his backer made affidavits supporting the other's claim of reduction to practice prior to the date of a reference cited against him, and also that the backer was a lawyer and man of affairs and the junior party an inventor and possessed of some experience in applying for and obtaining patents, it was *held* that the senior party was entitled to an award of priority of invention.

2. Where the effect of the testimony of the junior party to an interference is not more than to raise a doubt in respect of the question of the originality of the invention, the raising of such doubt will not be sufficient to overcome the burden of proof imposed by the earlier application of the other party, especially when the claim of the latter is reinforced by favorable decisions by the board of examiners-in-chief and the Commissioner.

No. 219.   Patent Appeals.   Submitted January 16, 1903.   Decided February 3, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.        *Affirmed.*

The facts are sufficiently stated in the opinion.

.*Mr. Nathan Heard* and *Mr. Frederick L. Emery* for the appellant.

*Mr. James A. Watson* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding originally involving an issue with two counts as follows:

" 1. The combination with a boiler, of a hood or casing above the same having an upper outlet and a downwardly-extending flue, and an exhaust-pipe extending into said flue.

" 2. A boiler, a casing above the boiler to receive the products of combustion, a flue or stack extending downward from said casing and exhaust-pipe to discharge the exhaust-steam into the said flue or stack so as to carry the products down and out of the lower end of the latter, and an air-inlet opening, into which the air is drawn by the exhaust and out of which the products of combustion flow naturally when exhaust is not operating."

The interference was first declared between Stanley and Stanley, whose application was filed May 24, 1899, and Henry Howard, who filed June 21, 1899. Testimony was being taken in the case when George E. Whitney filed his application on December 1, 1899, and the proceedings were suspended in order that he might be made a party. The examiner of interferences awarded priority to Whitney upon both counts. Stanley and Stanley failed to appeal from that decision and have consequently passed out of the controversy. On Howard's appeal, the examiners-in-chief awarded priority to Whitney of the invention of the first count, and to Howard of the second.

On appeal to the Commissioner by both parties, that decision was affirmed. The question as to count 1 has been settled by the Commissioner's decision, as Whitney alone has prosecuted an appeal therefrom.

The question for determination is not one of priority between two inventors, working independently of, and unknown to each other, but one of originality between two claimants of the same invention, who occupied peculiar relations to each other not only at the time of conception and during a long period of experimentation, but also when the applica-

tion of Howard was filed. The testimony upon which the solution of this question depends is practically confined to the depositions of Howard, Whitney, and Upham, the "financial backer" of Whitney who is equally interested with him in the result.

It appears that Whitney was a builder of motor-carriages and had invented improvements in engines and gear. Upham was a lawyer of some means, and in the latter part of 1896, agreed to furnish Whitney money for the construction of a carriage which was finished in January, 1897, and exhibited shortly thereafter at a bicycle fair. It was in this construction that the Patent Office tribunals found an embodiment of count 1 of the issue, but not that of count 2.

Howard was a chemical engineer and employed in 1897, as assistant superintendent of certain chemical works, in or near Boston where all the parties resided. After trying a motor-carriage of Whitney's construction, he contracted with the latter on September 13, 1897, to construct one for him at the agreed price of $1,500. The written contract describes the character of the vehicle by reference to another then under construction for one Scott, and adds the following, " but subject to any alterations and improvements which may hereafter be agreed upon between the contracting parties."

Howard, unquestionably, interested himself in devising means for the dissipation of the exhaust-steam from the boilers of motor-carriages and the same was a matter of discussion between him and Whitney from time to time. Upham, referring to one of these conversations occurring in the fall of 1897, said:

" Mr. Whitney and Mr. Howard were then discussing devices for drying out, or rendering invisible, the steam from an automobile. I remember that Mr. Howard had at his finger's end a good deal of information respecting this."

The carriage for Howard was not finished until February, 1899, and contained a draft device which Howard had planned. Drawings showing this device substantially were prepared by Howard and witnessed by Whitney and Upham November 27, 1897. It appears that in the actual construc-

tion the ascending flue and exhaust-steam radiator, being heavy and expensive, were omitted.

It appears from Upham's testimony that from November, 1897, to April, 1898, there was " a constant wrangling between Mr. Howard and Mr. Whitney as to who had first suggested the various devices. There were several of them, and, as near as I can recollect, Mr. Howard, on the one hand, claimed to be the inventor of all of them, while, on the other hand, Mr. Whitney claimed to be the inventor of all of them. According to the best of my recollection, and so far as my observation went, the difficulty would arise in this way: Mr. Whitney is very free and ready to talk about his mechanical ideas. Mr. Whitney would make a suggestion, and Mr. Howard would, acting upon this suggestion, take a pencil and make a sketch. Subsequently Mr. Howard would claim to be the inventor. I did the best I could to keep peace between them. I remember that there were discussions about this steam-drying apparatus, and one day when Mr. Whitney and I were out at Mr. Howard's house the discussion became quite hot. Mr. Howard prepared a list of the things he said he had invented, which I think included everything that had been invented since work on Mr. Howard's carriage first began, and he wanted Mr. Whitney and myself to sign an agreement that he had invented these things. Mr. Whitney stoutly objected to a good many of them. I remember, among others, there was a discussion about this steam-drying apparatus. It appeared to me that Mr. Howard had invented this specific device. He was certainly the first one that I heard who suggested using the heat of the exhaust-steam to heat the outside air."

He said in answer to an additional question by counsel for Whitney, that Howard " never, to my knowledge, claimed to be the inventor of any device relating to this subject-matter, or involving the issues of this interference, other than that shown on drawing Whitney Exhibit No. 13, up to the time when he made his application now in interference."

Some time in 1897, or 1898, prior to the date referred to in the statement of Upham copied above, he and Whitney

had organized a corporation under the name of Whitney Motor Wagon Co., for the manufacture of motor-carriages. Whitney was the president and Upham, the secretary and treasurer of this corporation.

It seems that, to end the wrangling referred to by him, Upham, on April 2, 1898, procured the signatures of Howard, Whitney, and the Motor Company to an agreement relating to the manufacture of vehicles containing the various improvements, etc. The first recital of this agreement is:

" Whereas the said Howard has invented a certain improvement in hydrocarbon or liquid-fuel burners, and also a certain improvement in apparatus for rendering exhaust-steam from an engine invisible: "

It was then provided that Howard should apply for a patent for the first invention at once, and for the second " as soon as said exhaust-steam apparatus has been tried and found successful." It was further provided that Howard and Whitney should jointly apply for patent for an apparatus for expelling the fuel from the tank or receiver.

Patents were to be applied for through certain-named solicitors, and all expenses of the Patent Office as well as of construction, etc., were to be borne by the company.

In pursuance of this agreement, the corporation's solicitors prepared and filed Howard's application on June 21, 1899, having delayed the same for about a year in order that the invention might be tested.

It is conceded that the subject-matter of the issue was described in the specifications of Howard's application, but the claim of the issue was not then included. The same may be said of Whitney's application also.

The parties were then in full accord, and Upham went with Howard to the solicitors who prepared his application, and who was familiar with all that occurred. His explanation now is:

" My recollection is that I was weak enough to permit Mr. Howard to make an application for a device which I knew was not his invention, thinking that it would come to the Whitney Motor Carriage Co., in any event under our con-

tract, and that Mr. Howard would feel injured if we did not permit him to make the application."

While this application was pending it became necessary to show invention by Howard prior to the date of a reference cited by the primary examiner.

For this purpose, as stated in the opinion of the Commissioner, Howard filed an affidavit that he reduced the invention to practice prior to May 13, 1899, and Upham and Whitney filed corroborating affidavits referring to the affidavit of Howard on March 18 (November 9), 1899. The blueprints accompanying these affidavits show a device of a different specific form from that shown in the present applications, but it embodies the same broad ideas, and it cannot be presumed that Whitney was in ignorance of the application in regard to which he made the affidavit. Howard's action in filing his application through Upham, Whitney's financial backer and an officer of Whitney's company, and in going to Whitney for an affidavit to be used in the prosecution of his application, shows that there was no intention on his part to keep the matter secret from Whitney.

In considering the conduct of the parties in the several proceedings related, it is to be remembered that Upham was a lawyer as well as a man of affairs, and that Whitney, who was skilled in the art, was also an inventor and possessed of some experience in the practice of applying for and obtaining patents. Moreover, the prosecution of Howard's application was conducted by the solicitors of Upham's and Whitney's company and remained in their charge until after the filing of Whitney's application and the declaration of the interference.

We agree, therefore, with the Commissioner that " all these circumstances raise a strong presumption that Howard is the true inventor of the matter covered by his application."

Without further discussion, it is sufficient to say, that giving to the evidence on behalf of Whitney the benefit of all inferences fairly deducible therefrom, the effect is nothing more than to raise a doubt in respect of the question of originality.

Raising this doubt is not sufficient to overcome the burden of proof imposed by the earlier application of Howard alone, much less when reinforced by the adverse decisions of both the board of examiners-in-chief and the Commissioner, each of which shows that every material circumstance in evidence, as well as every detail of the exhibited machines and drawings, received attention and discriminating consideration.

The decision appealed from must be affirmed; and it is so ordered.    This decision will also be certified to the Commissioner of Patents as the law requires.        *Affirmed.*

Mr. Justice GOULD, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this case, in the place of Chief Justice ALVEY.